UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

NEW WORLD TRADING CO. LTD., and
FUJIAN UPTOP TRADING CO., LTD.,

                **Plaintiffs,**

    - against -

UDI AVSHALOMOV and 2 FEET
PRODUCTIONS, INC.,

                **Defendants.**

------------------------------------------------------X

**OPINION AND ORDER**

**11 Civ. 6219 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Plaintiffs, New World Trading Co. Ltd. ("New World") and Fujian

Uptop Trading Co., Ltd. ("Uptop"), bring this diversity action[1] against individual

defendant Udi Avshalomov and corporate defendant 2 Feet Productions, Inc. ("2

Feet"). Plaintiffs bring causes of action for fraud and breach of contract against

both defendants. Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)"), defendants moved to dismiss the Complaint in its entirety. For the

following reasons, defendants' motion is granted in part and denied in part.

---

      [1]    *See* 28 U.S.C. § 1332.

## I.  BACKGROUND[2]

New World was incorporated in the People's Republic of China[3] and "is in the business of having shoes manufactured by factories in China and selling these shoes to wholesalers abroad."[4]  New World does not have an export license, which is needed in China to export goods out of the country.[5]  Uptop is a trading company, also incorporated in China, which has such an export license.[6]  New World exports its shoes through Uptop, which takes title to the shoes and exports them in its name.[7]  K.J. Kim is the President of New World.[8]  Avshalomov is the Chairman and Chief Executive Officer of 2 Feet.

From March 17 through March 20, 2010, Kim had a series of meetings with Avshalomov at his office in Jinjian City, Fujian, China.[9]  The sales

---

[2]    The following facts are drawn from the Complaint, Ex. A to the 12/7/11 Declaration of Diane B. Cavanaugh in Support of Defendants' Motion to Dismiss, and are assumed to be true for purposes of this motion.

[3]    *See* Complaint ¶ 2.

[4]    *Id.* ¶ 9.

[5]    *See id.* ¶ 10.

[6]    *See id.* ¶¶ 3, 11.

[7]    *See id.* ¶ 12.

[8]    *See id.* ¶ 13.

[9]    *See id.* ¶ 14.

terms of various shoe designs were discussed and agreed upon in these meetings.[10] In each instance, "Avshalomov represented that the *defendants* would pay in full the amounts then agreed upon."[11]  According to plaintiffs, "[a]t the time that Avshalomov made these representations, they were false, and Avsholomov knew they were false.  Avshalomov never intended to pay, or to have 2 Feet pay, the amounts that had been agreed upon."[12]

On April 1, 2010, 2 Feet began placing orders for shoes, having placed sixty-eight orders in that month alone.[13]  Relying on defendants' representations, New World began ordering the production of the shoes ordered by 2 Feet.[14]  The shoes manufactured at the behest of New World were shipped out by Uptop and accepted by the defendants.[15]  Defendants proceeded to pay part of the amount owed through wire transfers.[16]  Out of the total owed of $2,776,909.20,

---

[10]     *See id.*

[11]     *Id.* (emphasis added).

[12]     *Id.* ¶ 16.

[13]     *See id.* ¶ 17.  Four more orders were placed in May, July and August 2010.  *See id.*

[14]     *See id.* ¶ 18.

[15]     *See id.*

[16]     *See id.* ¶ 20.

defendants paid $1,918,446.85, leaving a balance of $858,462.35.[17]  Plaintiffs seek this amount in compensatory damages as well as $1,000,000.00 in punitive damages.[18]

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."[19]  The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal.*[20]  *First,* "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[21]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

---

[17]      *See id.* ¶ 21.

[18]      *See id.* ¶¶ 24, 26, 29.

[19]      *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks omitted).

[20]      556 U.S. 662, 679 (2009).

[21]      *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

withstand a motion to dismiss.[22]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[23]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[24]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[25] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[26]

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

---

[22]     *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[23]     *Id.* at 670.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[24]     *Twombly*, 550 U.S. at 564.

[25]     *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[26]     *Id.* (quotation marks omitted).

incorporated by reference in the complaint."[27] The court may consider matters that are subject to judicial notice.[28]  The court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[29]

## III.   DISCUSSION

### A.   Fraud

#### 1.   Particularity

"A claim for fraud under New York law requires a showing of: '(1) a misrepresentation or material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury.'"[30]  Federal Rule of Civil Procedure 9(b)

---

[27]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[28]     *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[29]     *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[30]     *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760, 2011 WL 347222, at *5 (S.D.N.Y. Feb. 1, 2011) (quoting *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996)).  *Accord Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (same); *Bridgestone/Firestone, Inc. v.*

provides that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Thus, "allegations [of fraud] must be supported by the pleadings of specific facts tending to show that, at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions."[31]

Here, plaintiffs allege that "Ashalomov [sic] again represented and agreed that the defendants would pay the amounts that were fixed based upon the price to be quoted."[32] Plaintiffs further allege that "[a]t the time that Avsholomov [sic] made these representations, they were false, and Avsholomov knew they were false. Avshalomov never intended to pay, or to have 2 Feet pay, the amounts that had been agreed upon."[33] These conclusory allegations satisfy neither the particularity requirements of Rule 9(b) nor the elements of fraud under New York law. Moreover, the allegations of defendants' contemporaneous intent to withhold payment is belied by plaintiffs' admission that defendants already paid a large

---

*Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (same).

[31]   *Carlucci v. Owens-Corning Fiberglas Corp.*, 646 F. Supp. 1486, 1491 (E.D.N.Y. 1986).

[32]   Complaint ¶ 15.

[33]   *Id.* ¶ 16.

portion of the amount allegedly due.[34]  Thus, plaintiffs' fraud claim is dismissed

for failure to plead with sufficient particularity.[35]

### 2.   Overlapping Claims

"It is black letter law in New York that a claim for common law fraud

will not lie if the claim is duplicative of a claim for breach of contract."[36]  Here,

plaintiffs' conclusory allegations of fraud are premised upon an alleged breach of

contract, *i.e.*, defendants' refusal to pay the entire amount due.  "[A] duplicative

---

[34]  *See Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.,* No. 01
Civ. 8871, 2002 WL 1144903, at * 4 (S.D.N.Y. May 29, 2002)  (stating that "the
acknowledgment in the complaint that the defendants made a partial payment of
the debt would seem to undermine any inference of fraudulent intent").

[35]  Generally, in such circumstances, leave to amend the complaint would
be granted to cure any pleading defects.  Here, however, because the fraud claim is
dismissed as a matter of law, *see infra,* any amendment would be futile.  *See
Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 362
(E.D.N.Y. 2010) (denying leave to amend where vague allegations of
misrepresentation did not meet Rule 9(b)'s particularity requirements and the
"putative fraud claims would never survive a motion to dismiss") (citing *Lucente v.
IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (leave to amend need not be granted
where the proposed amended claim would not survive a Rule 12(b)(6) motion to
dismiss)).

[36]  *Clifton v. Vista Computer Servs.*, LLC, No. 01 Civ. 10206, 2002 WL
1585550, at *2 (S.D.N.Y. July 16, 2002) (citing *Bridgestone/Firestone*, 98 F.3d at
19-20).  *Accord Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382,
389 (1987) ("It is a well-established principle that a simple breach of contract is
not to be considered a tort unless a legal duty independent of the contract itself has
been violated.").

fraud claim may not be brought alongside a breach of contract claim unless the plaintiff distinguishes the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."[37]  Because defendants' alleged promise to pay the full amount due was not "collateral" or "extraneous" to the contract in dispute, plaintiffs' fraud claim is duplicative of the breach of contract claim.  Moreover, allegations that a defendant knowingly made a false statement indicating a present  intention to perform under a contract are insufficient to state a claim of fraud under New York law.[38]  Courts

---

[37]     *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002) (citing *Bridgestone/Firestone*, 98 F.3d at 20 (under New York law, a fraud claim associated with a breach of contract can be sustained, and tort damages recovered, only when plaintiffs can demonstrate a fraudulent misrepresentation "collateral" or "extraneous" to the contract)).

[38]     *See Lehman v. Dow Jones & Co., Inc.*, 783 F.2d 285, 295 (2d Cir. 1986) (plaintiff may not recover on a fraudulent inducement claim based on a promise made with no intent to perform that is not distinct from his prior breach of contract action); *Drexel Burnham Lambert, Inc. v. Saxony Hts. Realty Assoc.*, 777 F. Supp. 228, 235 (S.D.N.Y. 1991) ("[A]n attempt to convert a contract claim into a tort claim by the additional naked assertion that the breaching party never intended to perform is doomed to fail."); *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F. Supp. 1340, 1354 (S.D.N.Y. 1988) (failure to perform under contract sounded in contract and could not be converted into a tort claim of fraud just by alleging defendant never intended to fulfill its promise).

have repeatedly rejected attempts by plaintiffs to convert breach of contract claims into fraud claims by merely alleging that defendants never intended to fulfill their contractual duties.[39]   Thus, defendants' motion to dismiss plaintiffs' cause of action sounding in fraud is granted.  That claim is dismissed with prejudice.

### B.      Breach of Contract

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound."[40]  Under New York's Uniform Commercial Code, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."[41]  According to the Second Circuit:

---

[39]      *See, e.g., Telecom Int'l America Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.") (quotation marks and citation omitted); *Carlucci*, 646 F. Supp. at 1491 (stating that under New York law, "a claim predicated upon a breach of a contractual arrangement cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the agreement").

[40]      *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (quotation marks and citation omitted).

[41]      N.Y. U.C.C. § 2-204(a).

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) (citation omitted).  There must be "an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.*  "[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981) (citation omitted). However, "not all terms of a contract need be fixed with absolute certainty." *Express Indus.*, 93 N.Y.2d at 589. "[A] contract is not necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement." *May Metro. Corp. v. May Oil Burner Corp.*, 290 N.Y. 260 (1943). "[A]t some point virtually every agreement can be said to have a degree of indefiniteness," but "parties . . . should be held to their promises." *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989).[42]

Thus, under New York law, a party asserting a breach of contract must allege:  "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach."[43]

   In arguing that plaintiffs failed to allege any of the contractual terms necessary to form a contract, defendants cite *Key Items, Inc. v. Ultima Diamonds,*

---

[42]   *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (parallel citations and footnote omitted).

[43]   *Dozier v. Deutsche Bank Trust Co. Americas*, No. 09 Civ. 9065, 2011 WL 4058100, at *3 (S.D.N.Y. Sept. 1, 2011).

*Inc.*[44]  However, in *Key Items*, the court found the existence of an oral contract,

stating as follows:

> Drawing all inferences in Key Items' favor, however, the complaint alleges that Ultima Diamonds ordered goods from Key Items which Key Items delivered, that the parties agreed on the quantity, pricing method, product specifications and delivery dates for the jewelry and that this agreement was confirmed via e-mail by Key Items. Key Items has, thus, alleged all the essential elements of a breach of contract claim – offer, acceptance, consideration, and mutual assent. *See McFadden v. Clarkeson*, CV 09–0112, 2010 WL 2076001 at *4 (E.D.N.Y. May 18, 2010) (mutual assent exists where "there has been a meeting of the minds between the parties on all essential terms of the agreement."); *Lomaglio Assocs. Inc. v. LBK Mktg. Corp.*, 94 Civ. 3208(KTD), 1999 WL 705208 at *6 (S.D.N.Y. Sept. 10, 1999) (Duffy, D.J.), citing *Fakhoury Enters., Inc. v. J.T. Distribs.*, 94 Civ. 2729(PKL), 1997 WL 291961 at *3 (S.D.N.Y. June 2, 1997) (Leisure, D.J.) ("In a contract for a sale of goods, the essential terms are quantity, price, and time and manner of delivery. The fact that one or more of these terms is left open is not fatal"). Key Items has also properly alleged an intent to be bound to the oral agreement. The factors relevant to such a determination are: "(1) any explicit statement that only a writing shall be binding; (2) partial performance; (3) complete negotiation of all terms; and (4) whether the subject matter of the contract is one that normally requires a written agreement." *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F.Supp.2d 175, 179 (S.D.N.Y. 2007) (Wood, D.J.), citing *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir.1984).  In this case, there was no statement that the parties would not be bound absent a written agreement, Key Items alleges that it delivered

---

[44]    No. 09 Civ. 3729, 2010 WL 3291582 (S.D.N.Y. Aug. 17, 2010).

goods pursuant to the alleged contract, and, as noted above, nearly all essential terms were negotiated.  Key Items has, therefore, properly alleged the existence of a contract.  *See Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F.Supp.2d 377, 389–90 (S.D.N.Y. 2005) (Marrero, D.J.) (e-mail confirming oral agreement created issues of fact concerning whether parties intended to be bound).[45]

Here, as in *Key Items*, plaintiffs have alleged all of the terms needed to form an enforceable contract.  With regard to quantity, plaintiffs alleged that 2 Feet placed a total of seventy-two orders.  With regard to price, plaintiffs alleged that defendants owe them a total of $2,776,909.20 for the orders placed.  With regard to the terms of delivery, plaintiffs alleged that the shoes would be shipped out by Uptop.  Moreover, as for mutual assent, plaintiffs allege that "[t]he terms of the sales of the various designs of shoes were discussed and agreed upon in each of the meetings" that took place between Kim and Avshalomov in March 2010.[46]  Finally, plaintiffs allege that they performed their part of the contract by supplying the requested shoes but that defendants only partially performed their end by making only partial payment.   Thus, in keeping with the spirit of Federal Rule of Civil Procedure 8, plaintiffs have sufficiently alleged the existence of a contract and defendants' breach thereof.  Defendants' motion to dismiss plaintiffs' breach of

---

[45]      *Id.* at *6.

[46]      Complaint ¶ 13.

13

contract claim is therefore denied.

### C.     Personal Liability

Plaintiffs seek to impose personal liability on Avshalomov for the

debt owed by 2 Feet.  In imposing individual liability, plaintiffs do not attempt to

pierce the corporate veil.  Instead, plaintiffs claim that Avshalomov represented

that both he and 2 Feet would pay in full the amounts owed.[47]  By doing so,

Avshalomov arguably agreed that he personally, as well as 2 Feet, would be

responsible for payments under the contract.  For the following reasons, plaintiffs'

allegations are insufficient to individually bind Avshalomov to the debts of 2 Feet.

Because corporations are not natural persons, they must necessarily

act through their officers and other duly authorized agents.[48]  Accordingly, under

New York law,

> an agent who signs an agreement on behalf of a disclosed
> principal will not be individually bound to the terms of the
> agreement "unless there is clear and explicit evidence of the
> agent's intention to substitute or superadd [sic] his personal
> liability for, or to, that of his principal." *Mencher v. Weiss*,
> 306 N.Y. 1, 4 (1953).  The rationale behind this rule is that,
> "[i]n modern times most commercial business is done
> between corporations," not individual stockholders or
> officers of the corporation, who, in many instances, own

---

[47]     *See id.* ¶ 14 ("Avshalomov represented that the *defendants* would pay
in full the amounts then agreed upon.") (emphasis added).

[48]     *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465 (2010).

> little or no stock in the corporation. *Salzman Sign Co. v.
> Beck*, 10 N.Y.2d 63, 67 (1961). An individual who is only
> an indirect beneficiary of the agreement thus should not be
> directly bound to the terms of the agreement absent clear
> evidence of an intent to create individual liability.[49]

Rarely have New York courts imposed individual liability for the acts of an agent

working for a disclosed principal.[50] The factors a court will consider in

determining whether a corporate officer should be personally bound include: "the

length of the contract, the location of the liability provision(s) in relation to the

signature line, the presence of the signatory's name in the agreement itself, the

nature of the negotiations leading to the contract, and the signatory's role in the

corporation."[51]

Here, plaintiffs have merely alleged that Avshalomov verbally

represented that "the defendants" would pay the amounts due and owing. Other

than this conclusory allegation, plaintiffs have not alleged that Avshalomov signed

a contract in his individual capacity, that his name appears anywhere in any

------

[49]     *Lerner v. Amalgamated Clothing and Textile Workers Union*,
938 F.2d 2, 5 (2d Cir. 1991) (parallel citations omitted).

[50]     *See Blake v. Fiit Int'l, Inc.*, No. 05 Civ. 6150, 2007 WL 980362, at
*10 (S.D.N.Y. Mar. 30, 2007) ("New York courts will hold a corporate officer
individually liable only in rare circumstances.").

[51]     *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35
F.3d 29, 35 (2d Cir. 1994).

15

writing, or that he verbally represented his intention to assume personal liability. Nor is there any indication of a personal guarantee clause anywhere.  Use of the word "defendants" in the plural does not, by itself, impose individual liability on an officer-agent such as Avshalomov.[52]  Accordingly, plaintiffs' breach of contract claim against Ashalomov individually is dismissed.  However, plaintiffs are given leave to amend their Complaint and plead additional facts establishing Avshalomov's personal liability, if any such facts exist.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' fraud claim is dismissed with prejudice.  Furthermore, plaintiffs' breach of contract claim against Avshalomov is dismissed, with leave to amend.  If plaintiffs choose to amend, their Amended

---

[52]      *See, e.g., Blake*, 2007 WL 980362, at *11 ("[Plaintiff] has not submitted any material that clearly and explicitly establishes that [agent-officer] intended to be personally bound. [Plaintiff] has submitted an e-mail written by [agent-officer] to [plaintiff] on October 14, 2004, in which he states '[t]he agreement between *us* is as follows . . . .' but the usage of "us" is too vague to establish that [agent-officer] was referring to himself in an individual capacity.") (emphasis in original, citation omitted); *Vanlab Corp. v. Blossom Valley Foods Corp.*, No. 04-CV-6183, 2005 WL 2406001, at *5 (W.D.N.Y. Sept. 29, 2005) (where guarantee letter stated "We hereby guarantee," use of the pronoun "we" indicated that agent signed jointly with the corporation and did not intend to be personally bound). *But see Yellow Book of New York, Inc. v. Shelley*, 904 N.Y.S.2d 216, 217 (2d Dep't 2010) (where there was a "notation under the signature line on each contract which recited that the signatory was signing 'Individually and for the Company,' corporate president "explicitly agreed to accept personal liability").

Complaint must be submitted to this Court and served on their adversary by

October 19, 2012.  An initial conference has been scheduled for October 29, 2012,

at 3:30 p.m., in Courtroom 15C.  The parties must bring a completed Scheduling

Order, which can be found on the Court's website (www.nysd.uscourts.gov) to this

conference.  The Clerk of the Court is directed to close the motion to dismiss

(Docket Entry # 5).


SO ORDERED:



Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              September 24, 2012


17

**- Appearances -**

**For Plaintiffs:**

Michael J. Calvey, Esq.
Michael J. Calvey LLC
8000 River Road, Suite 10D
North Bergen, NJ 07047
(201) 442-0851

**For Defendants:**

Kyle C. McGovern, Esq.
Diane B. Cavanaugh, Esq.
Lyons McGovern, LLP
399 Knollwood Road, Suite 216
White Plains, NY 10603
(914) 631-1336